FILED

DEC 1 5 2016

CLERK, U.S.C. STRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, )    Mag. Case Number: 16MJ3837
                                )
                 Plaintiff, )    COMPLAINT FOR VIOLATION OF
                                )
                                )    Title 21, U.S.C., Sections 841 and 846 -
NOE LOPEZ, )    Attempted Distribution of Methamphetamine;
                                )    Title 21, U.S.C., Sections 841 and 846 -
                                )    Attempted Distribution of Cocaine;
                                )    Title 18, U.S.C., Section 201(b)(2) -
                 Defendant, )    Receiving Bribe by Public Official
                                )

The undersigned complaint being duly sworn states:

Count 1
(Attempted Distribution of Methamphetamine)

Beginning on an unknown date and continuing up to and including December 14, 2016, within the Southern District of California, defendant NOE LOPEZ did knowingly and intentionally attempt to distribute 6 pounds and more of a mixture and substance believed by him to be methamphetamine, a Schedule II Controlled Substance, to another person and took at least one substantial step toward committing the crime; in violation of Title 21, United States Code, Sections 841 and 846.

Count 2
(Attempted Distribution of Cocaine)

Beginning on an unknown date and continuing up to and including December 14, 2016, within the Southern District of California, defendant NOE LOPEZ did knowingly and intentionally attempt to distribute 7 kilograms of a substance believed by him to be cocaine, a Schedule II Controlled Substance, to another person and took at least one substantial step toward committing the crime; in violation of Title 21, United States Code, Sections 841 and 846.

<u>Count 3</u>
(Receiving Bribe by Public Official)

Beginning at an unknown date and continuing up to and including December 14, 2016, within the Southern District of California, defendant NOE LOPEZ, then a public official, that is, a United States Border Patrol Agent, did directly and indirectly corruptly demand, seek, receive, accept, and agree to receive something of value personally, that is, cash, in return for being induced to do and omit to do an act in violation of defendant's official duties, including, without limitation, facilitating the importation and distribution of controlled substances in violation of the laws of the United States and failing to enforce controlled substances laws of the United States; in violation of Title 18, United States Code, Sections 201(b)(2).

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

Signature of Complainant
Carla J. Croft, Special Agent
Federal Bureau of Investigation

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 15 DAY OF DECEMBER, 2016.

MAGISTRATE JUDGE JILL L. BURKHARDT

## PROBABLE CAUSE STATEMENT

I, Special Agent Carla J. Croft, declare under penalty of perjury, that the following is true and correct to the best of my knowledge:

A.   The Introduction and Initial Meetings with Defendant Noe Lopez

According to a confidential human source ("CHS"), in late October 2016, he met Noe Lopez ("LOPEZ"), a U.S. Border Patrol ("USBP") agent who works at the USBP Imperial Beach Station. In the following few weeks, the two became friendly, began communicating via WhatsApp,[1] and met in person. During that time, LOPEZ described his ability to smuggle narcotics into the United States and offered to help the CHS do so for a fee.

For instance, on October 20, 2016, LOPEZ provided the CHS with specific details about how he (LOPEZ) could retrieve backpacks full of drugs along the United States/Mexico international border fence while on duty and deliver the drugs to the CHS at a safe location. LOPEZ showed the CHS a Google map from the CHS's phone and identified two desirable drop areas along the border, including one known as "Shit Bridge," a location in the Imperial Beach Border Patrol Station area of responsibility within the Southern District of California.[2]

On October 25, 2016, LOPEZ drove the CHS to multiple locations along the international border and provided additional information about how narcotics could be smuggled. During the conversation, LOPEZ offered to smuggle hard narcotics for between $1,000 to $2,000 (USD) per backpack.

On November 23, 2016, the CHS met with LOPEZ again in person and, during a recorded and monitored conversation, agreed to accept $500.00 in U.S. currency per pound of methamphetamine for the pickup and delivery of the backpacks. In preparation for the actual events, LOPEZ and the CHS went to LOPEZ's vehicle, a

---

[1]   WhatsApp is web-based communications service between mobile telephones that enables users to transmit written communications back and forth.

[2]   "Shit Bridge" is the name of the location often used due to its proximity to a water treatment facility.

black GMC Yukon, California license plate 6RCL382, where LOPEZ showed the CHS a sample backpack for such transactions.

On November 30, 2016, LOPEZ called the CHS and stated that he was at Walmart purchasing backpacks for the transactions. Later that day, the two met in person and, during the recorded meeting, LOPEZ discussed retrieving and transporting other drugs in addition to methamphetamine. LOPEZ stated he would transport cocaine for $1,000.00 to $1,200.00 per kilogram, but later settled on transporting cocaine for $1,000.00 per kilogram. At the conclusion of the meeting, LOPEZ went with the CHS to LOPEZ's vehicle where LOPEZ took out three black backpacks and gave them to the CHS. Agents conducting surveillance observed LOPEZ open the driver's side passenger door, retrieve black backpacks, and provide the backpacks to the CHS. Walmart surveillance video confirms that a male believed to be LOPEZ based on his general appearance and clothing, purchased the backpacks earlier that day.

B.    Attempted Distribution No. 1: Methamphetamine

On December 5, 2016, the CHS contacted LOPEZ and advised that the smuggling group was ready to make a drug drop. LOPEZ stated he would be working on December 6, 2016, but would check if he was scheduled to work at one of the desired drop locations.

Later, LOPEZ contacted the CHS and told him that he was scheduled. LOPEZ added that his scheduled location was not a good spot to drop drugs, but that he was 75% sure he would be able to trade with a female assigned to "Shit Bridge." LOPEZ told the CHS to be in contact in the morning and that he would let the CHS know if he was able to recover the backpacks and make the delivery.

On December 6, 2016, the CHS spoke with LOPEZ. LOPEZ confirmed he was able to make the switch and that he would be able to retrieve the drugs when dropped. USBP schedule logs confirmed that a female was originally assigned to the area known as "Shit Bridge" and LOPEZ switched assignment locations with her. During the call, the CHS also told LOPEZ the backpack would contain 6 pounds of methamphetamine. LOPEZ told the CHS the drop needed to occur by a certain time in order for him to retrieve the drugs before the end of his shift.

Several hours later, the CHS contacted LOPEZ via WhatsApp and stated the group was ready to drop the drugs. Shortly thereafter, law enforcement agents dropped a backpack containing what LOPEZ believed to be 6 pounds of methamphetamine in the pre-determined location and LOPEZ retrieved the backpack while on duty. LOPEZ then placed the backpack in his USBP vehicle.

After his shift, LOPEZ transferred the backpack from his USBP vehicle to his Yukon; however, rather than go to the pre-arranged meeting point, LOPEZ contacted the CHS via WhatsApp and changed the location to a strip mall in Chula Vista.

At the strip mall, agents observed LOPEZ exit his vehicle, take out a backpack matching the backpack dropped by agents, put it on his back, and walk around the location parking lot. When the CHS arrived, agents observed LOPEZ walk over to the CHS's vehicle carrying a black backpack and enter the vehicle. According to the CHS, while inside, LOPEZ handed him the backpack and the two discussed, among other things, arrangements for payment the next day. Agents later confirmed that the backpack provided by LOPEZ to the CHS was the backpack, including the 6 pounds of simulated methamphetamine, that agents had dropped at the pre-determined location.

On December 7, 2016, LOPEZ contacted the CHS via WhatsApp and arranged a meeting location for payment. After working his regular shift, LOPEZ met the CHS at a restaurant in Eastlake in a monitored meeting where the CHS gave LOPEZ $3,000 for his services of retrieving and distributing narcotics. In a recorded conversation, LOPEZ further discussed where he was to be assigned the following day and said it was one of the areas he preferred to have the drugs dropped. LOPEZ accessed Google maps on his cell phone and showed the area to the CHS known as "Goat Canyon," a location in the Imperial Beach Border Patrol Station area of responsibility within the Southern District of California. LOPEZ identified where he would be parked and where the backpack of drugs should be dropped.

C.    Attempted Distribution No. 2: Cocaine

On December 8, 2016, the CHS contacted LOPEZ to confirm that he was at "Goat Canyon" and would be able to retrieve a backpack of narcotics. LOPEZ indicated to the CHS in a WhatsApp message that he had put a cola bottle on the fence to mark where the drugs should be dropped. Toward the end of LOPEZ's

shift, agents dropped what LOPEZ believed to be 7 kilograms of cocaine in one of the backpacks provided by LOPEZ as planned. LOPEZ retrieved the backpack while on duty and placed the backpack in his USBP vehicle.

At the end of his shift, LOPEZ transferred the backpack from his USBP vehicle to his Yukon. He then drove his Yukon to the previously determined location, met the CHS, and gave the backpack to the CHS. In a recorded conversation, LOPEZ told the CHS he would call him at approximately 6:00 AM the following morning to say if he was working in an area where they could do another drug drop. LOPEZ and the CHS confirmed LOPEZ would be paid for delivering what he believed to be 7 kilograms of cocaine the following day. Agents later confirmed that the backpack provided by LOPEZ to the CHS was the backpack, including the 7 kilograms of simulated cocaine, that agents had dropped at the pre-determined location.

On December 9, 2016, after his regular work shift, LOPEZ drove to another strip mall, met the CHS in a monitored meeting, and received $7,000.00 from the CHS for his services of retrieving and distributing narcotics, as agreed.

Carla J. Croft, Special Agent
Federal Bureau of Investigation